**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**JOHN DUMITRU**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JOHN DUMITRU,                          )
                                       )
    Appellant-Petitioner,              )
                                       )
        vs.                       )   No.  75A05-1210-PC-501
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Respondent.               )

APPEAL FROM THE STARKE CIRCUIT COURT
The Honorable Raymond D. Kickbush, Judge
Cause No. 75C01-0004-CF-27

**August 13, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

John Dumitru ("Dumitru") was convicted of Murder, a Felony;[1] Attempted Murder, as a Class A Felony;[2] two counts of Neglect of a Dependent, as Class D felonies;[3] and Resisting Law Enforcement, as a Class A misdemeanor;[4] and was sentenced to an aggregate term of imprisonment of one-hundred years. Dumitru appealed, and this Court affirmed his appeal in a memorandum decision. Dumitru v. State, Cause No. 75A05-0108-CR-384 (Ind. Ct. App. March 28, 2002). Dumitru subsequently sought post-conviction relief, which was denied. He now appeals.

We affirm.

**Issues**

Dumitru presents numerous issues for our review, which we reframe as the following two issues:

I.   Whether the post-conviction court violated Dumitru's due process rights when it did not permit Dumitru to subpoena his prior counsel and certain lay witnesses; and

II.  Whether the post-conviction court erred when it concluded that Dumitru did not receive ineffective assistance of trial counsel.

**Facts and Procedural History**

We take portions of our statement of facts from this Court's prior adjudication of

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. §§ 35-41-5-1 & 35-42-1-1.

[3] I.C. § 35-46-1-4(a)(1).

[4] Then-effective I.C. § 35-44-3-3(a)(1); recodified effective July 1, 2012 at I.C. § 35-44.1-3-1(a)(1).

Dumitru's direct appeal.

On the morning of April 23, 2000, Dumitru was at home with his wife, Mariana, his teenaged step-daughter, Liliana, his two young sons, and his infant daughter. Dumitru drank some brandy, and his friend James Clemons came by for a visit. While Dumitru and Clemons talked, Liliana sat at the kitchen table with them. After Clemons left, Dumitru became angry with Liliana and told her that it was rude of her to sit and listen to his conversation with Clemons. Dumitru yelled at Liliana, and Mariana intervened, telling Dumitru to leave Liliana alone. Dumitru became angrier, and he and Liliana were yelling at each other. Liliana eventually left the kitchen, but Dumitru was still yelling. Mariana took Dumitru's glass and threw the brandy in his face. Then Mariana went out to the garage, found Dumitru's bottle of brandy, and smashed it on the ground. Mariana also found a dirty diaper and threw it against a window where Dumitru was standing inside the house.

While Mariana was outside sweeping up the broken glass, she heard Liliana scream. Mariana ran back into the house and found Liliana lying motionless on the living room floor. Dumitru was standing nearby holding a rifle. Mariana asked Dumitru what he had done, but he did not respond. Mariana then knelt down and tried to determine whether Liliana was breathing, and Dumitru hit Mariana on the head with the rifle butt. Dumitru then hit Mariana twice more, on her hip and ankle. But Mariana was able to run out of the house, and she sought help from a neighbor, who telephoned law enforcement.

When deputies from the Starke County Sheriff's Department arrived, Dumitru would not let them into the house. Dumitru was standing at a window holding his two young sons. After an hour-long standoff, deputies forced their way into the house, found Liliana lying in a pool of blood, and arrested Dumitru. Liliana was taken to a nearby hospital, where she died two days later.

At the Starke County Jail, Detective Ron Lawson read Dumitru his Miranda rights. Dumitru is Romanian, and he speaks both Romanian and English, but his English is described as "broken." As Detective Lawson read the Advice of Rights and waiver form to Dumitru in English, Detective Lawson stopped at the end of each sentence and asked Dumitru whether he understood what had been read to him. Dumitru answered affirmatively each time. After Dumitru signed the waiver form, Detective Lawson took Dumitru's tape-recorded statement. Dumitru admitted that he had struck

Liliana and Mariana with his rifle. A deputy administered a breathalyzer test, which indicated that Dumitru's blood alcohol content was .08%.

The State charged Dumitru with Liliana's murder, the attempted murder of Mariana, three counts of neglect of a dependent, and resisting law enforcement. Prior to trial, Dumitru filed a motion to suppress his confession and a notice of defense of mental disease or defect. The trial court appointed two disinterested psychiatrists, who agreed that Dumitru was competent to stand trial and that he was not insane at the time he committed the charged crimes.[5] A jury found Dumitru guilty as charged, and the trial court entered judgment of conviction on all counts, with the exception of one of the neglect of a dependent counts, which the court merged with the murder charge. The trial court sentenced Dumitru to sixty years for Liliana's murder, forty years for the attempted murder of Mariana, two years each for the neglect of a dependent convictions, and one year for the resisting law enforcement conviction. The trial court ordered the sentences for murder and attempted murder to be served consecutively, for a total executed sentence of 100 years.

Dumitru, Slip Op. at 2-4.

In its opinion, the panel that decided Dumitru's appeal addressed three issues: whether the trial court erred when it denied Dumitru's motion to suppress his confession, whether the prosecutor engaged in misconduct, and whether the trial court's sentencing was in error. With respect to Dumitru's confession, this Court found no error on the part of the trial court in denying Dumitru's motion to suppress on the basis of his limited knowledge of English, his claims of intoxication, and his prior experience with both Romanian and American police. Id. at 4-7. The Dumitru panel further found no prosecutorial misconduct occurred when the prosecutor "informally questioned" one of the court-appointed psychiatrists prior to trial. Id. at 9. In a footnote, the panel that decided Dumitru's direct

---

[5] While one of the psychiatrists, Dr. Robert Reff, initially determined that Dumitru was legally insane at the time of Liliana's murder, Dr. Reff changed his opinion on cross-examination when the State pointed out that Dumitru had described his actions to police within a few hours after his arrest. Dr. Reff testified that his initial opinion was based upon his understanding that Dumitru had no recollection of events.

4

appeal observed:

> While one of the psychiatrists, Dr. Robert Reff, initially determined that Dumitru was legally insane at the time of Liliana's murder, Dr. Reff changed his opinion on cross-examination when the State pointed out that Dumitru had described his actions to police within a few hours after his arrest. Dr. Reff testified that his initial opinion was based upon his understanding that Dumitru had no recollection of events.

Id. at 4 n. 1.

On March 20, 2003, Dumitru, proceeding pro se, filed a petition for post-conviction relief. During portions of the post-conviction proceedings, Dumitru was represented by John England ("England"), from the office of the Indiana Public Defender, but Dumitru represented himself during the bulk of the proceedings.

July 28, 2008, Dumitru filed his amended petition for post-conviction relief. In his petition, Dumitru contended that he received ineffective assistance of trial counsel for failure to properly investigate his background, family history, and mental state; failure to properly object to the admission of otherwise-inadmissible evidence at trial; failure to move for appointment of an interpreter; failure to properly prepare for a hearing on a motion to suppress evidence and for trial; failure to consult with experts and to request court appointment of expert witnesses; failure to tender and object to specific jury instructions; and failure to object to the prosecutor's alleged improper influence on court-appointed psychologists. Dumitru also alleged that he was denied effective assistance of appellate counsel.

On November 28, 2011, Dumitru filed a motion requesting issuance of subpoenas for certain lay witnesses who he claimed would provide testimony concerning events and

5

Dumitru's conduct on the day he committed the offenses. The same day, Dumitru filed a motion requesting the issuance of subpoenas to compel testimony of his trial counsel and of his by-then withdrawn post-conviction counsel, England. On December 9, 2011, the post-conviction court denied Dumitru's motion to subpoena counsel, concluding that the testimony of Dumitru's prior counsel would not be relevant because the attorneys' testimonies were sought to address matters already determined during Dumitru's prior appeal. On December 20, 2011, the post-conviction court denied the motion to subpoena lay witnesses on similar grounds.

On May 11, 2012, Dumitru filed a second motion for issuance of subpoenas to compel testimony from his prior counsel and from lay witnesses.

An evidentiary hearing on Dumitru's petition for post-conviction relief was conducted on June 8, 2012. During the hearing, the post-conviction court denied Dumitru's second request to subpoena witnesses and declined to admit into evidence sets of questions Dumitru proposed to ask his prior attorneys, again on the ground that those questions were irrelevant. The post-conviction court also ruled that matters related to the admissibility of Dumitru's confession, the appointment of an interpreter, and improper influence of the prosecutor upon one of the court-appointed psychiatrists were res judicata and not subject to review during the post-conviction proceedings.

At the end of the hearing, the post-conviction court took the evidence and arguments under advisement. On September 21, 2012, the post-conviction court entered findings and conclusions denying Dumitru's petition for post-conviction relief.

This appeal ensued.

**Discussion and Decision**

Standard of Review

The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. Id. In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. Id.

A petition for post-conviction relief is not a substitute for a direct appeal from a conviction or sentence. P-C.R. 1(1)(b). Post-conviction petitions afford defendants with the opportunity to raise issues not known at trial or unavailable upon direct appeal; claims that were available to a petitioner on direct appeal are not available in a proceeding for post-conviction relief. Bunch v. State, 778 N.E.2d 1285, 1290 (Ind. 2002). "These are applications of the basic principle that post-conviction proceedings do not afford the

opportunity for a super-appeal." Id. (citing Wrinkles v. State, 749 N.E.2d 1179, 1187 (Ind. 2001)).  Thus, a petitioner waives any freestanding claim of error in his petition where that issue was "known or available at the time of direct appeal but [was] not raised."  Reed v. State, 856 N.E.2d 1189, 1193-94 (Ind. 2006).

### Due Process during the Post-Conviction Proceedings

We turn first to Dumitru's claim that the post-conviction court did not honor his due process rights.  Dumitru's claim in this regard centers around two arguments:  first, that the post-conviction court improperly denied his requests that subpoenas be issued to compel testimony from his former counsel and certain other laypersons; and, second, that the post-conviction court did not honor his right to an evidentiary hearing.  We address each of these in turn.

### *Subpoenas*

Dumitru argues that the post-conviction court abused its discretion when it denied his request for subpoenas to compel the testimony of his trial, appellate, and post-conviction counsel, on the one hand, and of certain lay witnesses, on the other.

Where, as here, a petitioner for post-conviction relief proceeds pro se, our post-conviction rules govern the availability of subpoenas to compel the presence of witnesses during a post-conviction hearing.

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony.  If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued.  If the

8

court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

P-C.R. 1(9)(b). Such decisions are left to the discretion of the trial court. See Fuquay v. State, 689 N.E.2d 484, 486 (Ind. Ct. App. 1997), trans. denied (applying the abuse of discretion standard to post-conviction court's order that the case be tried by affidavit under P-C.R. 1(9)(b)); also Tapia v. State, 753 N.E.2d 581, 585 (Ind. 2001) (observing that "a fact-finding court is given discretion to act on an issue when it is in a better position … to evaluate the factual context," and applying the abuse of discretion standard to the post-conviction court's denial of a petitioner's request to withdraw a petition for relief).

Here, Dumitru twice sought subpoenas to obtain testimony from his trial, appellate, and post-conviction counsel and from certain laypersons. The matters concerning which Dumitru intended to examine his prior attorneys were not related to issues cognizable during post-conviction proceedings. They were instead resolved by this Court during Dumitru's direct appeal of his conviction, such as language barriers, intoxication, psychological problems, and fear of police rendering his confession involuntary; or were related to free-standing claims of error subject to review only upon direct appeal, such as witness testimony concerning the material facts of the case. Post-conviction petitions are not intended to be "super-appeal[s]," however. Bunch, 778 N.E.2d at 1290. We thus find no abuse of discretion in the post-conviction court's denial of Dumitru's request to subpoena his prior attorneys.

We reach the same conclusion with respect to Dumitru's request for subpoenas for lay witnesses. These subpoenas would have compelled testimony from individuals known to

9

Dumitru personally. The testimony Dumitru sought related solely to matters related to the evidence adduced at trial, the reliability and motivation of certain witnesses, and Dumitru's claim that he was falsely convicted. All of these matters are free-standing claims of error related to the sufficiency of the evidence behind Dumitru's conviction; none of them are appropriate for consideration in a post-conviction proceeding. We therefore affirm the trial court's decision to deny Dumitru's request for subpoenas to compel the testimony of laypersons.

*Right to an Evidentiary Hearing*

Dumitru also claims that the trial court violated his due process rights by denying him an evidentiary hearing because there were facts in dispute concerning his convictions.

Dumitru is correct that he was entitled to a hearing on his claim for post-conviction relief. But we find no merit in his claim that he was denied that right because an evidentiary hearing was in fact conducted, with Dumitru present, on June 8, 2012. Dumitru presented documentary evidence related to his ability to understand and express himself in English, was cross-examined by the State, was questioned by the post-conviction court, and was asked on several occasions whether he had other evidence to present or other statements to make. Several of Dumitru's exhibits were admitted into evidence, while the State presented no evidence of its own except for a request that the post-conviction court take judicial notice of this Court's prior resolution of Dumitru's direct appeal. We thus cannot conclude that the trial court denied Dumitru his due process right to an evidentiary hearing.

10

Ineffective Assistance of Trial Counsel

We turn now to Dumitru's claim that he received ineffective assistance of trial counsel, in violation of his Sixth Amendment right to counsel under the United States Constitution. We review such claims under the standard set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The inquiry turns, at bottom, on "whether counsel's performance, as a whole, fell below 'an objective standard of reasonableness' based on 'prevailing professional norms.'" Woods v. State, 701 N.E.2d 1208, 1211 (Ind. 1998) (quoting Strickland, 466 U.S. at 685).

"First, a defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." Id. "Second, a defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial," that is, a trial where the result is reliable. Id. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id.

Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000). Where it is possible to resolve a case on the question of prejudice, we

should do so in order to avoid "the often nettlesome question of whether the attorney's performance was objectively unreasonable." State v. Van Cleave, 674 N.E.2d 1293, 1296 n.3 (Ind. 1996) (citing Strickland, 466 U.S. at 697). Thus, we afford counsel "'considerable discretion in choosing strategy and tactics, and we will accord those decisions deference.'" Curtis v. State, 905 N.E.2d 410, 414 (Ind. Ct. App. 2009) (quoting Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001)), trans. denied. We presume counsel "'made all significant decisions in the exercise of reasonable professional judgment,'" id. (quoting Timberlake, 753 N.E.2d at 603), and counsel's choice of strategies "will not be second-guessed even if the strategy in hindsight did not serve the post-conviction petitioner's best interests." Id. (citing State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997)). "'Isolated poor strategy, bad tactics, a mistake, carelessness or inexperience do not necessarily amount to ineffective counsel unless, taken as a whole, the defense was inadequate.'" Woods, 701 N.E.2d at 1211 (quoting Davis v. State, 675 N.E.2d 1097, 1100 (Ind. 1996)).

Dumitru sets forth a number of complaints concerning his trial counsels' performance. Among these complaints are that counsel failed to adequately investigate Dumitru's background in Romania and his history of mental illness; that counsel failed to interview Dumitru, Mariana, and other family members and friends before trial about the events of April 23, 2000; that counsel did not properly object to the admission into evidence of Dumitru's confession to police on the day of the offense; that counsel did not request the services of an interpreter for Dumitru's use during trial to allow him to assist in his defense; that counsel "did not establish the full last name of the victim," (Appellant's Br. at 32); that

counsel did not request an independent medical examination of Liliana while she was on life support after the April 23, 2000 incident that led to her death; and that counsel failed to challenge the misrepresentation of certain evidence by the prosecutor. Dumitru contends that all these amount to ineffective assistance of trial counsel, and that he is thus entitled to post-conviction relief.

We do not agree.

Much of Dumitru's argument on these points invokes a common theme: that there was insufficient and incorrect evidence presented at trial; that Dumitru did not adequately understand English to assist in preparation of his defense; and that Dumitru's psychiatric symptoms, prior experience with Romanian police, and intoxication on the day of his offense rendered his actions and his confession involuntary. It is not within this Court's purview, during post-conviction proceedings, to review the sufficiency of the evidence underlying a conviction. Dumitru's counsel asserted an insanity defense; the jury rejected the defense. Counsel moved to suppress the confession, the trial court rejected this challenge, and this Court affirmed the trial court's decision on appeal. To the extent Dumitru's arguments assert such free-standing claims, they are improper subjects for post-conviction relief.

As to other matters Dumitru presents in his appeal, such as whether his trial counsel erred when they did not seek assistance from the Romanian consulate and did not seek appointment of additional experts for the purposes of evaluating his psychiatric condition, Dumitru did not present evidence to the post-conviction court establishing how these claimed errors prejudiced him. He now presents bald assertions of error on these matters. Absent

13

demonstrable prejudice, a court may not grant post-conviction relief, and we find no error in the post-conviction court's denial of such relief here.

Simply put, Dumitru's claimed errors of trial counsel do not raise matters appropriate for proceedings on post-conviction relief. Rather, they amount to requests that we second-guess counsel's performance without establishing a basis for prejudice. Thus, while counsel's efforts did not achieve the results Dumitru desired, they were not so unreasonable or prejudicial as to constitute ineffective assistance of counsel. See Badelle v. State, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that counsel's decision not to call or seek additional witnesses was within the range of reasonable assistance of counsel where trial counsel's efforts were otherwise "more than adequate").

We therefore affirm the post-conviction court's denial of relief on Dumitru's claim of ineffective assistance of trial counsel.

### Conclusion

The post-conviction court did not deprive Dumitru of his due process rights when it denied his requests to subpoena his prior counsel and certain lay witnesses, nor did the court err when it denied Dumitru's petition for post-conviction relief.

Affirmed.

MAY, J., and BRADFORD, J., concur.