**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Sep 25 2012, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**CARY L. PATRICK**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARY L. PATRICK, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1109-PC-413 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-0912-PC-11

**September 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

Cary L. Patrick appeals the post-conviction court's denial of his petition for post-conviction relief. Patrick raises three issues for our review, which we restate as the following two issues:

1. Whether he received ineffective assistance from his trial counsel when counsel failed to object to the admission of evidence obtained pursuant to a search warrant; and

2. Whether he received ineffective assistance from his appellate counsel when counsel did not raise on appeal whether it was error for the trial court to allow various officers to testify that Patrick had been uncooperative with them during a search.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts underlying Patrick's convictions for four counts of attempted murder, Class A felonies, and one count of arson, as a Class B felony, were stated by this court on his direct appeal:

> [Sometime prior to the summer of 2007,] a niece of [Robert] Badgley's [sic], fourteen[-]year[-]old K.K., was living in Chapel Hill, North Carolina. She spent a lot of time talking to her friends on the internet using the screen name "peachybeach." Someone using the screen name "Hopkins" and several other screen names talked to K.K. on the [i]nternet and would not let her alone. At this same time, flowers and pizza the family did not order showed up at K.K.'s house.
>
> At one point Badgley's daughter [M.B.] received a message from "peachybeach" asking for the Badgleys' home address. Thinking she was communicating with K.K., the girl gave the address. Sometime after that, someone spray painted K.K.'s telephone number on the Badgley's garage door.

Patrick v. State, No. 45A05-0810-CR-614, 908 N.E.2d 1280, at *1 (Ind. Ct. App. June 22, 2009) ("Patrick I"). Further:

Badgley and his family lived in St. John, Indiana. On the evening of August 18, 2007, M.B. was playing at home with her friends, J.L., L.L. and A.S. While outside M.B. saw an old red sports car driving down her street. Since she had been told to stay away from a car such as this, she and her friends hid and then went into the house to watch a movie.

That same evening Sandra Sarsfield and her sister, Cheryl Ladowski, also saw an older model red Camaro in the cul de sac driving back and forth slowly every twenty minutes starting about 6:45 p.m. Sarsfield saw that the driver was a male with black hair.

About 8:15 p.m., while walking to a neighbor's house, Sarsfield saw the car in front of the driveway belonging to Badgley's next door neighbor. She heard the car's door slam and saw a stocky Caucasian man with dark wavy hair who was wearing dark clothing walk up the driveway. Around 8:30 or 8:45 p.m., Ladowski, who had walked farther and was on her way back, saw a man with the same description holding two very large red gas cans. After Ladowski returned to her house, she and Sarsfield stepped out for a cigarette and saw the Camaro take off at a high rate of speed, without stopping for a stop sign.

While the children were watching television in the living room, they saw that the attached sunroom looked orange. M.B. called her father who opened the door to the sunroom and discovered the room was on fire. The fire was put out. The fire department determined that the fire had been intentionally set from outside the house and that an accelerant had been used.

Police Captain Bernard Johnson investigated the fire. When he asked Mr. Badgley if there was anyone he should look into, Badgley responded "Cary Patrick," against whom he had previously secured a restraining order.

The next day the police went to Patrick's home in Warsaw, Indiana, and discovered his red Camaro. Although it was raining heavily, the windows of the car were open and there was a strong odor of gasoline coming from the car. The officers saw Patrick inside the house and knocked on the door, but no one answered it. Officer Fryzel went to the back of the house and saw that Patrick had opened the kitchen window. He advised Patrick of the fire and told him there had been children in the house. Patrick replied that he knew that.

The police called Patrick's father, who came home and let the officers into the house. Patrick was wearing dark trousers and a dark T-

shirt, and his clothing smelled of gasoline. He was given <u>Miranda</u> warnings and was placed under arrest. When interviewed at the St. John police station, Patrick denied any involvement in the fire and denied being in St. John. The police mentioned the restraining order against Patrick, and Officer Johnsen asked why Patrick thought someone would light Badgley's home on fire. Patrick said, "Maybe that's what happens when you put out restraining orders."

The police also impounded the Camaro and took it to St. John. Officers found a Schererville CVS receipt in the vehicle, dated August 18, 2007, for the purchase of a lighter, candy and Moon Pies. [Internal footnote six: Schererville is less than three miles from St. John.]

The police located the clerk at CVS who had made the sale and asked if she could identify the purchaser. She was shown a photographic array that included Patrick's picture. She immediately identified Patrick, who was picture number 1, then said, "Oh, wait a minute. Maybe it is number 3, but I'm leaning toward number 1."

Three days after the fire, Sarsdale and Ladowski went to the police station and identified Patrick's red Camaro as the one that had been in their neighborhood.

<u>Id.</u> at *3-4 (citations to the record omitted).

During the course of investigating Patrick for harassment of K.K. in the year preceding the fire, Columbia City officers initially obtained two search warrants for Patrick's residence.[1] The officers procured the first search warrant in November 2006 and a second warrant in April of 2007, both based on the probable cause affidavits of Columbia City Police Officer Dwayne Hively. Pursuant to their April 2007 search, officers seized a computer.

When this computer was turned on, it initiated with an AOL messaging screen and the name "wellHeythere012" and a password appeared on the screen. The computer contained some software programs to crack passwords. Other screen names on the computer included "snapcracklepop," "peachybeach," and several that included the name

_____

[1] As discussed below, officers eventually obtained a third search warrant in August of 2007.

4

> "Hopkins." There was a note on the computer called [K.K.'s] suicide. The police also seized Patrick's cell phone and found K.K.'s and A.S.'s telephone numbers stored in the phone. The cell phone records indicated calls and text messages made to K.K.

Id. at *2 (alterations original; footnote omitted). The note, "K.K.'s suicide," had been circulated in K.K.'s school sometime in early 2007. K.K. did not author that note.

On direct appeal following his convictions, Patrick's counsel first challenged the admissibility of the evidence seized pursuant to the November 2006 search warrant. We concluded that the affidavit supporting the warrant for probable cause was so lacking that the warrant was defective as a matter of law and that no reasonable officer would have relied on the warrant in good faith. Id. at *1-2. However, we noted that Patrick did not "make any argument whatever concerning the validity of th[e April 2007] warrant or the materials seized upon its execution," and that "the evidence produced under the [April] 2007 warrant was substantially equivalent to that complained of by Patrick under the [November 2006] search warrant." Id. at *2-3.

Rather, Patrick's complaint regarding the evidence seized under the April 2007 warrant was that it was inadmissible under Indiana Evidence Rule 404(b). We disagreed and held that the evidence seized under the April 2007 warrant was admissible under Rule 404(b) because it tended to show a connection between Patrick and the Badgleys. Id. at *3. However, we acknowledged that "[t]he mere fact that Patrick apparently engaged in harassing K.K. on the internet and by telephone has little tendency to lead to the conclusion that he must have committed arson." Id.

Having reviewed Patrick's arguments regarding the evidence seized pursuant to the two warrants, we then explained that, even without considering the evidence seized

pursuant to either of the two warrants, the State had presented sufficient evidence to support Patrick's convictions.  Id. at *4.  In particular, we concluded that "the totality of the evidence, while circumstantial, clearly supports" Patrick's convictions.  Id.  We further noted that any errors were harmless based on their "probable impact on the jury, in light of all the evidence in the case . . . ."  Id. at *2.

On December 2, 2009, Patrick filed a pro se petition for post-conviction relief, which he later amended.  Patrick raised numerous allegations of ineffective assistance from his trial and appellate counsel, as well as various allegations of fundamental error.  The post-conviction court held an evidentiary hearing on June 14, 2010.  And on August 22, 2011, the court entered its findings of fact and conclusion of law denying Patrick's petition.  This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Patrick appeals the post-conviction court's denial of his petition for post-conviction relief.  As we have explained:

> [The petitioner] bore the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence.  See Ind. Post-Conviction Rule 1(5); Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001).  Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available.  Timberlake, 753 N.E.2d at 597.  Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules.  Id.  If an issue was known and available, but not raised on direct appeal, it is waived.  Id.  If it was raised on appeal, but decided adversely, it is res judicata.  Id.
>
> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment.  Hall v. State, 849 N.E.2d 466, 468 (Ind. 2006).  The post-conviction court is the sole judge of the evidence and the

credibility of the witnesses. Id. at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. See Timberlake, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. Id.

Lindsey v. State, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), trans. denied.

Patrick argues that the post-conviction court erred for two reasons. First, he asserts that he was denied the effective assistance of trial counsel. Patrick also contends that he was denied the effective assistance of his appellate counsel. A claim of ineffective assistance of counsel must satisfy two components. Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.

With those principles in mind, we address each of Patrick's arguments.

**Issue One: Trial Counsel**

Patrick first asserts that he was denied the effective assistance of trial counsel for two reasons: because his counsel did not object to the admission of evidence seized pursuant to the April 2007 search warrant and because they did not object to the

7

admission of evidence seized pursuant to a third warrant obtained in August of 2007, after the fire had occurred.[2]  We cannot agree with Patrick's assertions.

Patrick cannot demonstrate that, but for his counsel's refusal to object to the admission of the evidence seized pursuant to the April 2007 search warrant, the result of his criminal trial would have been different.  See Strickland, 466 U.S. at 694.  As we explained in Patrick I, even if that seized evidence had been excluded, the totality of the remaining evidence "clearly supports" Patrick's convictions.  Patrick I, supra at *3-4.  Accordingly, Patrick cannot demonstrate prejudice from his counsel's purported error, and the post-conviction court's judgment on this issue is not clearly erroneous.

As for the August 2007 warrant issued after the fire, Patrick contends that the officer's affidavit in support of the August 2007 warrant was based on the false and misleading statements of two witnesses.  And, as a result of the August 2007 warrant, the State seized Patrick's red Camaro, his clothing, which smelled of gasoline, and the CVS receipt.

The affidavit in support of the August 2007 search warrant states that the affiant officer, Officer Johnsen, spoke to two witnesses at the scene of the arson—Lauren and Cheryl Ladowski—who had observed a red Camaro, in poor condition, near the Badgleys' residence on several occasions on the date of the fire.  Officer Johnsen also

---

[2]  The August 2007 warrant and supporting affidavit, as well as other documents relevant to this appeal, are not contained in the Appellant's Appendix but were instead filed separately as "Appellant's Exhibit."  See Ind. Appellate Rule 50(a)(1) ("The purpose of an Appendix in civil appeals . . . is to present the Court with copies of only those parts of the record on appeal that are necessary for the Court to decide the issues presented.").  Further, insofar as Patrick attempted to raise any arguments under Indiana's Constitution, those arguments are not supported by cogent reasoning and are waived.  App. R. 46(A)(8)(a).

reported that Mr. Badgley had told him that he had a restraining order against Patrick. And Officer Johnsen stated that Patrick owns a red, 1984 Camaro.

Here, Patrick asserts that Lauren and Cheryl subsequently testified to facts materially different from those reported to Officer Johnsen immediately after the fire. But Lauren's subsequent testimony wholly omits the information contained in Officer Johnsen's affidavit; she neither confirmed nor denied the facts as stated by Officer Johnsen. However, another witness, Sandra Sarsdale, Lauren's aunt, did testify to facts substantially similar to those Officer Johnsen had attributed to Lauren. Likewise, Cheryl's subsequent trial testimony is substantially similar to the statements Officer Johnson attributed to her in his affidavit.

Accordingly, had Patrick's counsel objected to the admission of the State's evidence seized pursuant to the August 2007 warrant on the grounds that the foundation underlying Officer Johnsen's affidavit was false and misleading, the trial court would have overruled the objection. It is well established that, "in order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made." Overstreet v. State, 877 N.E.2d 144, 155 (Ind. 2007). As Patrick cannot demonstrate that the trial court would have been required to sustain any objection by his counsel to the admission of the evidence seized pursuant to the August 2007 warrant, Patrick cannot demonstrate that his counsel rendered unconstitutionally deficient performance in their failure to so object. See Strickland, 466 U.S. at 687-88. Thus, we cannot say that the post-conviction court's judgment on this issue is clearly erroneous.

**Issue Two: Appellate Counsel**

Patrick also argues that his appellate counsel was ineffective when she failed to raise as an issue on appeal trial counsel's purported failure to object to the testimony of several officers that Patrick was "not cooperative with them" during their investigation. See Appellant's Br. at 23. As our supreme court has explained:

> We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of trial counsel ineffectiveness. The defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. Ineffective assistance claims at the appellate level of proceedings generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well.

Fisher v. State, 810 N.E.2d 674, 676-77 (Ind. Ct. App. 2004) (citations omitted).

Patrick's argument in this appeal is based on the second category. We are especially deferential to appellate counsel on this type of claim:

> [T]he reviewing court should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.

Id. at 677 (alteration original; quotation omitted).

On direct appeal, Patrick's counsel argued the following: (1) that the November 2006 search warrant was invalid; (2) that the evidence seized pursuant to the April 2007 search warrant was inadmissible under Indiana Evidence Rule 404(b); and (3) that the evidence was insufficient to support Patrick's convictions. We agreed with Patrick's counsel on the first issue; the second question was a close decision for the State; and we agreed with the State that the totality of the remaining evidence supported Patrick's

10

convictions. Patrick I, supra, at *1-4. The post-conviction court expressly found that the trial court "did exclude several of the details surrounding the defendant's refusal to cooperate" with the investigating officers. Appellant's App. at 22. The post-conviction court further credited the testimony of Patrick's appellate counsel that "she chose the two issues to raise on appeal that she felt had the best likelihood of success" and that, given the record, Patrick could not demonstrate reversible error. Id. at 22-23.

We agree with the post-conviction court. The choice of Patrick's appellate counsel to raise the issues she did instead of the issue Patrick now asserts was reasonable in light of the facts of the case and precedent. See Fisher, 810 N.E.2d at 677. As explained in Patrick I, Patrick's appellate counsel raised meritorious arguments. Nonetheless, as we also explained in Patrick I, even without considering the allegedly inadmissible evidence, the facts presented by the State during his trial "clearly support[ed]" Patrick's convictions. Patrick I, supra, at *4. That same conclusion holds even when we do not consider the allegedly erroneous testimony regarding Patrick's lack of cooperation with police. See id. Thus, Patrick cannot demonstrate that his appellate counsel's performance was constitutionally deficient or that there is a reasonable probability that, but for the supposedly deficient performance, the result of his direct appeal would have been different. See Strickland, 466 U.S. at 694. As such, we cannot say that the post-conviction court's judgment on this issue is clearly erroneous.

Affirmed.

KIRSCH, J., and MAY, J., concur.