**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 17 2013, 5:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN PINNOW**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

WILLIAM J. EISELE,           )
                             )
    Appellant-Petitioner,    )
                             )
        vs.               )    No. 51A01-1304-PC-154
                             )
STATE OF INDIANA,            )
                             )
    Appellee-Respondent.     )

APPEAL FROM THE MARTIN CIRCUIT COURT
The Honorable Lynne E. Ellis, Judge
Cause No. 51C01-1102-PC-12

October 17, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

William J. Eisele ("Eisele") appeals from the denial of his petition for post-conviction relief ("PCR") following his conviction for burglary[1] as a Class A felony. He raises one issue on appeal, which we restate as whether Eisele was denied effective assistance of counsel when his trial counsel failed to file a motion to suppress prior to Eisele's guilty plea.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 14, 2004, Eisele pleaded guilty to the burglary described below. On June 25, 2003, John Lindsey ("John") and his wife Terri Lindsey ("Terri") drove to the Loogootee, Indiana, home of John's brother, Kevin Lindsey ("Kevin"). There, they observed an older model Ford Bronco parked in Kevin's driveway. The Bronco was dark blue and the front of the Bronco bore an airbrushed plate that depicted a skull and crossbones. *Pet'r's Ex.* 1 at 19. Terri noticed a man, later identified as Eisele, come from inside the house and place two items in the Bronco. Eisele retrieved a yellow rag from the Bronco and used it to wipe the handles to the side door of the house and returned inside the house. *Pet'r's Ex.* 8 at 2. John entered the house and saw Eisele bending over a television, trying to unplug it. Seeing John, Eisele grabbed a pair of scissors, lunged at John, and cut him with the scissors. Eisele chased John out of the house, entered the Bronco, and fled the scene. John and Terri called the sheriff's department and reported the burglary.

The following day, June 26, 2003, Deputy Sheriff Jeff Nonte ("Deputy Nonte") of

---

[1] *See* Ind. Code § 35-43-2-1(2).

2

the Martin County Sheriff's Department, filed an affidavit for a search warrant to search a mobile home located at 111 Poplar Street in Loogootee, Indiana, and a blue Ford Bronco bearing an airbrushed skull and crossbones license plate on the front of the vehicle. Deputy Nonte stated that Sheriff Tony Dant ("Sheriff Dant") had found the Bronco, which matched the description of the vehicle present at the scene of the burglary, parked in the driveway of the mobile home. Deputy Nonte's affidavit also stated:

> Terri Lindsey who observed the Bronco at the Lindsey residence has identified the [B]ronco at 111 Poplar as the vehicle involved in the incident at the Lindsey residence on the Loogootee-Dover Hill [R]oad. The vehicle is parked as if it belongs at the residence where it is located. Your affiant believes it reasonable that the vehicle or the residence where it is located contains items stolen from the Lindsey residence.

*Pet'r's Ex.* 7 at 3. The trial court, finding probable cause, issued a search warrant that same day authorizing and ordering the sheriff's department to search the Bronco and the mobile home for evidence connected to the burglary. In the Bronco, deputies found a yellow rag and a pair of scissors. From the mobile home, deputies recovered a black bag containing jewelry and money, as well as clothing that appeared to be what Eisele was wearing during the burglary. Inside the mobile home, Eisele made a statement to Sheriff Dant that everything the police were looking for was in the black bag. *Tr.* at 29.

On June 30, 2003, Deputy Nonte filed an affidavit for probable cause stating his belief that Eisele was the person who committed the burglary. The affidavit reflected that Sheriff Dant had searched the mobile home and found the black bag full of money and jewelry, and that Kevin's wife, Cindy, later identified the recovered items as belonging to her family. *Pet'r's Ex.* 8 at 3. Additionally, the affidavit stated that, during the search of

3

the mobile home, Eisele admitted to Sheriff Dant that everything they were looking for was in the black bag. *Id*. The State charged Eisele with one count of burglary resulting in bodily injury, a Class A felony. *Appellant's App*. at 17-18.

Debra Smith ("Smith"),[2] who represented Eisele at trial, did not file a motion to suppress either Eisele's incriminating statement or the evidence found in the mobile home. Instead, on April 14, 2004, almost ten months after the burglary, Eisele appeared in court and pleaded guilty as charged. *Id*. at 47-49. Pursuant to the plea agreement, the State agreed to seek a sentence no longer than the presumptive thirty-year sentence. *Id*. at 47-49. The trial court accepted the plea agreement, entered judgment, and following a sentencing hearing, sentenced Eisele to thirty years. *Id*. at 68-73. Eisele did not take a direct appeal.

On February 2, 2011, Eisele filed a pro se PCR petition. About one year later, Eisele, now represented by public defender John Pinnow, filed an amended PCR petition. In the petition, Eisele alleged that he "was denied the effective assistance of trial counsel when counsel did not move to suppress evidence obtained from the search of the residence and [Eisele's] subsequent incriminating statements." *Appellant's App*. at 139. He argued that the affidavit in support of the search warrant did not provide probable cause to search the mobile home because it contained no information connecting the mobile home to the Bronco. Likewise, Eisele maintained that the good faith exception could not save the affidavit's shortcomings. *Id*. at 140. Eisele asserted that, but for

---

[2] At the time of Eisele's conviction, his attorney's name was Debra Smith. Although Smith changed her name to Herthel by the time of the post-conviction hearing, for ease of reference we will call her Smith throughout. *Tr*. at 15.

4

Smith's error, "[t]here is a reasonable probability [Eisele] would not have pled guilty and would have insisted on going to trial." *Id*. at 141. Additionally, Eisele suggested that a motion to suppress would have been granted and that, without that evidence, the State would have had difficulty at trial connecting him to the burglary. *Appellant's App*. at 141.

The post-conviction court held a hearing on Eisele's petition. Smith testified that, through a discovery motion, she had obtained a copy of Deputy Nonte's probable cause affidavit and the search warrant, which revealed that the State had an adequate basis for the warrant. Smith first testified that, based on the following factors, it was her belief that a motion to suppress the evidence found in the mobile home would fail: (1) the police located the Bronco with the airbrushed skull and crossbones on the license plate; (2) two witnesses could identify the Bronco as having been at the scene of the burglary; and (3) it is reasonable to believe that the driver of the Bronco would not leave stolen jewelry in the vehicle. *Tr*. at 16-18. As to why she did not file a motion to suppress Eisele's incriminating statement, Smith testified that "whenever [Sheriff Dant] entered the [mobile] home any statement that [Eisele] would make after that, that was his own voluntary admission. Uh, I could not feel that that could be suppressed or that it would be suppressed." *Id*. at 17. Smith also testified regarding having advised Eisele about entering a guilty plea. *Id*. at 18.

Sheriff Dant also testified at the PCR hearing and said that the Bronco "was backed into the driveway" of the mobile home and bore the skull and crossbones license plate described by John and Terri. *Id*. at 27. Sheriff Dant noted that, pursuant to his

normal policy, he would "have Mirandized Mr. Eisele before [he] took a statement from him," and that Eisele gave a statement that "everything [the police] were looking for was in this [black] bag." *Id.* at 29.

Eisele admitted at the PCR hearing that he owned the Bronco, that he was driving the Bronco on the day of the burglary, that the Bronco was parked at the mobile home, and that he was renting the mobile home. *Id.* at 33, 36, 37. Nevertheless, Eisele claimed that had Smith prevailed in a motion to suppress his statement and the evidence recovered from the mobile home, he would not have pleaded guilty and would have proceeded to trial. *Id.* at 33-34. Eisele did not present any witnesses to testify about the reasonableness of Smith's conduct. During closing argument, Eisele conceded that evidence "tie[d] the Bronco to the scene of the burglary." *Id.* at 40.

The post-conviction court entered its findings of fact and conclusions thereon denying Eisele's PCR petition. He now appeals. Additional facts will be provided as necessary.

**DISCUSSION AND DECISION**

A petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004) (citing Ind. Post-Conviction Rule 1(5)). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered

6

findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* (quotation omitted).

On March 14, 2013, the post-conviction court issued its findings of facts and conclusions thereon and, citing to our Supreme Court's reasoning in *Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009), denied Eisele's PCR petition. The post-conviction court reasoned that Eisele was not prejudiced by Smith's representation because the State could have successfully prosecuted Eisele even without the evidence that Eisele sought to suppress. *Appellant's App.* at 169-70.

*Helton* is on all fours with the instant case. In *Helton*, the petitioner alleged that defense counsel rendered ineffective assistance by failing to move to suppress evidence prior to his guilty plea. 907 N.E.2d at 1021. The Supreme Court found that petitioner did not establish what other evidence of guilt was or was not available. *Id.* Therefore, he failed to meet his burden of proof to establish that he was prejudiced by counsel's alleged omission. *Id.*

In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel *performed deficiently* and the *deficiency resulted in prejudice*. *Helton*, 907 N.E.2d at 1023 (citing *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008)). Noting this standard, Eisele argues that the post-conviction court failed to address whether Smith's performance was deficient; he therefore dedicates a considerable portion of his brief to analyzing the adequacy of Smith's performance. *Appellant's Br.* at 9. We

need not do the same.  The United States Supreme Court has stated:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

*Strickland v. Washington*, 466 U.S. 668, 697 (1984).  Here, our decision rests on a finding of no prejudice.

Eisele's claim is that Smith's failure to file a motion to suppress was ineffective assistance of counsel.  "In order to prove prejudice stemming from ineffective assistance, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of his criminal proceeding would have been different."  *Helton*, 907 N.E.2d at 1023 (citing *Strickland*, 466 U.S. at 694).  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id*.  For purposes of this discussion, we assume without deciding that a suppression motion would have been granted.  *Id*.  We therefore assume that:  the warrant affidavit was insufficient to establish probable cause for the mobile home; Eisele's incriminating statement and the items recovered from his mobile home were the product of an unlawful search; and the seized evidence would have been inadmissible under the exclusionary rule.  This alone is not sufficient to establish ineffective assistance of counsel.  As our Supreme Court stated in *Helton,* "A petitioner alleging ineffective assistance of counsel in overlooking a defense

leading to a guilty plea must show a reasonable probability that, had the defense been raised, the petitioner would not have pleaded guilty and would have succeeded at trial." *Id*. For reasons explained below, Eisele has failed to carry his burden of proof.

At his post-conviction hearing, Eisele stated that had the evidence from the mobile home been suppressed, he would not have pleaded guilty. *Tr*. at 33. Eisele, however, provided no evidence as to why that would have been the case. At the post-conviction hearing, Eisele was asked, "What effect did the evidence obtained from the mobile home and your statement have in your decision to plead guilty?" *Id*. Eisele did not contend that without the evidence from the mobile home there would be insufficient evidence to convict him. Instead, he responded:

> [Smith] advised me that if I was to go ahead and try to fight it that they were going to give me an additional twenty years on top of (inaudible) for that thirty year cap. And basically advised me not to do so. She didn't really tell me not to do it . . . she just told me that and it just kind of scared me into doing it.

*Id*. Eisele's trial counsel, Smith, testified that she talked with Eisele about pleading guilty saying: "[A]s to [Eisele] pleading guilty I had to consider his past criminal record, the seriousness of the crime, uh, pros and cons of going to a trial. I mean, you know, once we go ahead get a jury, uh, he was facing, he could have had a presumptive sentence of thirty, he could have been facing up to fifty years." *Id*. at 18. While Eisele might have been willing to take a chance that he would have been acquitted, his considerations for pleading guilty were not merely about the evidence against him, but instead centered on the fifty-year sentence he might have received if convicted.

Furthermore, had Eisele decided to go to trial, the outcome would have likely been

9

the same. To obtain a conviction for burglary, the State is not required to introduce the items that were stolen. *Helton*, 907 N.E.2d at 1024. The exclusion of the jewelry and of Eisele's statement would not have foreclosed the prosecution and conviction. Here, the facts of the burglary could have been established through witness testimony and circumstantial evidence. *Id*. *See also Baker v. State*, 968 N.E.2d 227, 230 (Ind. 2012) ("'Circumstantial evidence alone is sufficient to sustain a burglary conviction.'"). Terri and John could have testified that, upon arriving at the home of Kevin, they saw in the driveway an older model, blue Ford Bronco that bore a front plate that was an airbrushed skull and crossbones. Terri could have testified that she saw a man leave the home, place items in the truck, and take a yellow cloth from the Bronco and use it to wipe off the home's door handles. John could have testified that he entered the home and saw the man trying to unplug Kevin's television. The man then grabbed a pair of scissors, lunged at and cut John, and then fled in the Bronco. Deputy Nonte obtained a search warrant, and even Eisele concedes that probable cause supported the search of the Bronco; this would have allowed the introduction of the yellow cloth and scissors, both of which were found in the Bronco. *Appellant's Br*. at 10 (citing *Tr*. at 40; *Appellant's App*. at 169). Kevin and Cindy could have testified regarding the items stolen from their home. During the post-conviction hearing, Eisele testified that the Bronco was his, a fact that the State could have proven at trial. *Tr*. at 36. He also testified that he drove the Bronco the day of the burglary. *Id*. The record before us contains no pertinent discovery motions or witness lists, and no other materials that suggest what other evidence could have been introduced at trial. Eisele produced no evidence regarding what, if any, evidence he

10

could have offered in his defense.

In *Helton*, our Supreme Court concluded:

> Helton bore the burden of proof at his post-conviction evidentiary hearing. It was thus incumbent on Helton—not the State—to show there was a reasonable probability of insufficient evidence if a suppression motion had been granted. Helton argues that without the seized contraband, "the odds of a better result at trial—indeed, the odds of the charges being dismissed prior to trial—would have been much better than negligible." He gives us no evidence to establish this claim. Perhaps if the evidence seized from Helton's home had been excluded, the chances of a better outcome would have been greater. But in the absence of any showing that the State's other evidence would have been insufficient, we are unable to evaluate the likelihood of acquittal or dismissal, and Helton has not shown a reasonable probability, or any probability at all, that he would have prevailed at trial.

907 N.E.2d at 1024-25. Like Helton, Eisele has not shown any probability that he would have prevailed at trial. Finding that Eisele was not prejudiced by his trial counsel's representation, the judgment of the post-conviction court denying Eisele post-conviction relief is affirmed.

Affirmed.

ROBB, C.J., and RILEY, J., concur.

11