## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 27 2017, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| John Berry<br>Pendleton, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Richard C. Webster<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Berry,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | February 27, 2017<br><br>Court of Appeals Case No.<br>49A05-1603-PC-553<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Clark H. Rogers, Judge<br><br>Trial Court Cause No.<br>49F25-0902-PC-24179 |

**Najam, Judge.**

# Statement of the Case

John Berry appeals the post-conviction court's denial of his petition for post-conviction relief. Berry raises a single issue for our review, namely, whether he received ineffective assistance from his trial counsel. We affirm.

# Facts and Procedural History

The facts underlying Berry's conviction and sentence were stated by our supreme court in his direct appeal:

> John Berry is a forty-one-year-old man who suffers from alcohol dependence. Berry began abusing alcohol at the age of nine and became a daily drinker by his sophomore year of high school. He also used marijuana, cocaine, methamphetamine, LSD, mushrooms, and ecstasy, but he stopped using these drugs at age thirty. His drinking, however, continued.
>
> Over the years, Berry has received rehabilitation treatment multiple times without success. He also has several convictions related to his alcohol use.
>
> In 1999, Berry was diagnosed with bipolar disorder. He has been hospitalized multiple times for a combination of symptoms related to his drug and alcohol abuse and bipolar disorder. He has been treated with mood-stabilizing, psychotropic, antianxiety, and antidepressant medications.
>
> On Monday, February 9, 2009, Berry went with his father, John Berry III (Father), to a house Father was helping renovate. Father parked his truck in front of the house. Tony Monday was working on the bathroom ceramic tile when Berry and Father arrived.

Father greeted Monday, and Monday told Father that he had borrowed the power drill and claw hammer during the weekend and that those tools were in the bathroom. Father then took Berry into one of the bedrooms where Berry was to do drywall work, and Father told Berry where the drill and hammer were.

Berry went into the bathroom and told Monday that he was "going to kill" him. Monday asked Berry why, and Berry told Monday to "shut up" and repeated that he was "going to kill" him. Berry then struck Monday in the head with the claw hammer. Monday pleaded with Berry to stop, but Berry ignored him and continued to strike Monday.

During this time, Father was in the living room area with his back to the hallway leading to the bathroom. Eventually, Monday exited the bathroom into the hallway, and Father turned around to see Monday bleeding profusely from his head. Father began attending to Monday's injuries as Monday explained to Father what happened. Father called 911.

Father then saw Berry in the kitchen, walking back and forth and wiping the hammer with a towel. Father asked Berry, "Did you hit him with the f* *king hammer?" Berry responded, "I guess so."

Father told Berry to go to the garage. Berry left through the back door, walked to the front of the house, opened Father's truck, and placed the hammer and bloody towel in a chest of drawers located in the covered bed of the truck. Berry then reentered the house and told Father he could not find the garage. Father told Berry where the garage was and that Berry should stay there.

Medics and police officers arrived soon after. Father told the officers where Berry was, and they surrounded the garage. Berry

initially refused to unlock the door and exit the garage, but Father was eventually able to convince Berry to come out.

Police handcuffed Berry and began to question him. They described Berry's behavior as nonchalant and very calm; noted that Berry's speech was clear; and stated that Berry offered no resistance. When asked where the hammer was, Berry told police it was in a drawer in the truck and directed them to the correct truck. When asked why he placed the hammer there, Berry responded that Father told him to do so. Finally, when asked why he hit Monday with the hammer, Berry gave nonsensical answers, including that God told him to hit Monday and that Monday was caught playing with an eagle. Berry was then taken to the hospital, admitted to a mental health center, and discharged several days later.

Monday suffered severe injuries. He underwent surgery to repair his nose, his eyes, and his broken jaw. Titanium plates were implanted into his skull, and he also lost sight in one eye. Monday can no longer use his dentures due to the damage inflicted to his jaw.

The State charged Berry with Class A felony attempted murder. Berry interposed an insanity defense. A court-appointed psychiatrist and court-appointed psychologist found Berry competent to stand trial.

Berry waived his right to a trial by jury. After hearing expert and lay testimony, the trial court found Berry guilty as charged, rejecting his insanity defense. . . .

*Berry v. State*, 969 N.E.2d 35, 36-37 (Ind. 2012).

In his direct appeal, Berry argued that the trial court erred when it rejected his insanity defense. Our court agreed, reversing his conviction on the basis that Berry suffered from "settled insanity." *Id.* at 36. However, the Indiana Supreme Court granted transfer and affirmed the trial court "because there was credible expert testimony that defendant's behavior was caused by his voluntary abuse of alcohol." *Id.*

Thereafter, Berry filed his petition for post-conviction relief. In relevant part, Berry asserted that his trial counsel, Michael Day, rendered ineffective assistance when Day pursued an insanity defense in lieu of arguing that Berry had committed a lesser-included offense to murder. The post-conviction court held an evidentiary hearing on Berry's petition. At that hearing, Day testified that "it was pretty clear from the facts and the evidence that from the get go that there was a mental defect at play here"; that the "insanity defense . . . was the best route given all the evidence"; that he "would have lost credibility . . . saying that . . . the insanity was . . . what was going on . . . [a]nd then at the same time say[ing] well, if insanity doesn't apply then what we have here is . . . aggravated battery"; and that Berry's argument in his petition was based on "hindsight." Post-Conviction Tr. at 4-6, 10. Crediting and relying on Day's testimony, the post-conviction court entered findings of fact and conclusions of law denying Berry's petition. This appeal ensued.

## Discussion and Decision

Berry appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review in such appeals is clear:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004) (citations omitted). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014).

[6] On appeal, Berry asserts that the post-conviction court erred when it found that Day did not render ineffective assistance of counsel when Day pursued an insanity defense in lieu of arguing for a lesser-included offense.

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the

second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 274. Moreover, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

[7] According to Berry:

> had Day researched the case of *Thompson v. State*, 804 N.E.2d 1146, 1149 [(Ind. 2004),] . . . he would have realized he had a losing defense. The Indiana Supreme Court ruled in *Thompson* that even if a defendant has expert witnesses testifying on his/her behalf . . . the trial court can disregard their opinion[s] and rely upon the testimony of lay witnesses, and that conflicting credible expert testimony is sufficiently probative of sanity . . . . Day knew that there were two lay witnesses testifying that [Berry] was not insane and that Dr. Masbaum would be testifying that [Berry's] condition was either voluntary intoxication or withdraw[al] from voluntary intoxication . . .

Appellant's Br. at 3. Berry further takes issue with Day's statement to the post-conviction court that, absent the proper mens rea, "there was no crime here," and Berry also contends that Day's expression of regret for not securing a better outcome for Berry demonstrates that Day "should have went [sic] with the lesser offense strategy." *Id.* at 4.

[8] Berry has not carried his burden on appeal. *Thompson* does not demonstrate that Day's strategy to pursue an insanity defense was unreasonable; rather, *Thompson* merely recognizes that such questions are questions of fact, to be credited or rejected by the fact-finder as it deems appropriate. Further, Day's statement to the post-conviction court that there was no crime absent the proper mens rea was a correct statement. And Day's regret for not securing a better outcome for Berry does not impugn the reasonableness of Day's decisions during the course of the trial proceedings.

[9] Berry's arguments on appeal are merely requests to reweigh the evidence credited by the post-conviction court, which we will not do. The post-conviction court found, based on Day's testimony, that Day's pursuit of the insanity defense in lieu of a lesser-included offense was objectively reasonable. Again, Day testified that he had concluded that that strategy was the "best route" in light of "the facts and the evidence" and that arguing an alternative basis for liability would have lost him essential credibility. Post-Conviction Tr. at 4-6, 10. Indeed, this court agreed with Day's assessment of the merits of the insanity defense, although the Indiana Supreme Court ultimately reinstated Berry's conviction. In sum, the post-conviction court's findings are supported by the record, and the court's findings support its judgment. Thus, we affirm the post-conviction court's denial of Berry's petition for post-conviction relief.

[10] Affirmed.

Bailey, J., and May, J., concur.