Darryl Eugene FISHER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 45S03–0306–PC–251.

Supreme Court of Indiana.

June 17, 2004.

Michael N. Pagano, Funk & Foster, Hammond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

The question we address is whether the failure to raise on appeal the trial court's refusal to give a reckless homicide instruction as a lesser-included offense to murder amounts to ineffective assistance of appellate counsel. On the facts of this case, we conclude that it does.

### Facts and Procedural History

In August 1993, Darryl Eugene Fisher was charged with murder arising out of a shooting incident at a Gary restaurant. The facts as recounted by the Court of Appeals on direct review are as follows:

> [O]n the evening of August 2, 1993, Kizmond Alexander, La'Montrell Thomas, and two other boys were riding bicycles around their neighborhood. After leaving an arcade around 11:00 p.m., the boys went to a diner to eat. The boys entered the lobby, approached the take-

out window, and waited for someone to take their orders. When no one came, the boys knocked on the door leading to the seated area. Fisher came to the door. The boys, who knew Fisher from the neighborhood, asked him to get someone to take their orders. Fisher closed the door and went back inside.

When no one again came to the window, the boys knocked on the door a second time. Fisher opened the door. Fisher and one of the boys just stared at each other for a few seconds. Kizmond smiled and began to laugh. Fisher came out through the doorway carrying a beer in his hand. Kizmond asked Fisher not to throw the beer on him. Fisher responded that he was not throwing beer, but was "slinging lead." Fisher then pulled a handgun from his back pocket. Kizmond turned and began to walk out of the door. Fisher placed the handgun against Kizmond's back and fatally shot Kizmond.

Fisher v. *State*, No. 45A04–9405–CR–188, 651 N.E.2d 356, slip op. at 2, 3 (Ind.Ct. App. June 20, 1995), *trans. not sought.*

At trial the State claimed the shooting was an act of retaliation. The defense characterized the shooting as an accident or the result of reckless grandstanding. At the close of trial defense counsel tendered an instruction on the lesser offense of reckless homicide, which the trial court declined to give. Ultimately the jury found Fisher guilty of murder. On direct appeal, counsel did not raise the issue of the refused reckless homicide instruction. The Court of Appeals affirmed the conviction.

In May 2001, Fisher filed a petition for post-conviction relief contending, among other things, that appellate counsel rendered ineffective assistance for failing to raise the issue of the refused instruction. At a hearing on the petition, the State

asserted "had this trial happened *today,* there would be error in not giving the instruction, if it was a correct statement of the law." Appellant's App. at 201 (emphasis added). The dispute at the hearing centered on whether at the time of Fisher's trial reckless homicide was an inherently included lesser offense of murder. The post-conviction court concluded that it was, but nonetheless denied Fisher's petition for post-conviction relief on the ground that the jury could not have concluded that the lesser offense of reckless homicide was committed but not the greater offense of murder. *Id.* at 132. In essence, according to the post-conviction court, there was no serious evidentiary dispute about the element distinguishing the greater offense from the lesser offense. On review a divided panel of the Court of Appeals affirmed the judgment of the post-conviction court. However it did so on grounds different from those on which the post-conviction court relied. The Court of Appeals determined (i) "the state of the law clearly requiring instructions for inherently lesser-included offenses was not settled until after Fisher's direct appeal had been decided" and thus (ii) the court could not "fault appellate counsel for choosing to raise issues that may have appeared at the time to serve Fisher's interests more effectively." *Fisher v. State,* 785 N.E.2d 320, 326–27 (Ind.Ct.App. 2003). Having previously granted transfer, we now reverse the judgment of the post-conviction court.

## Discussion

 Fisher contends appellate counsel rendered ineffective assistance for not raising as error on direct appeal the refused reckless homicide instruction. We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of trial counsel ineffectiveness. *Ben–Yisrayl v. State,* 729

N.E.2d 102, 106 (Ind.2000). The defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id.* Ineffective assistance claims at the appellate level of proceedings generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State,* 690 N.E.2d 188, 193–95 (Ind.1997). Fisher's claim is based on the second category.

■ This Court has noted the need for a reviewing court to be deferential to appellate counsel on this type of claim:

> [T]he reviewing court should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.

*Timberlake v. State,* 753 N.E.2d 591, 605 (Ind.2001) (quoting *Bieghler,* 690 N.E.2d at 194), *cert. denied,* 537 U.S 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002). We employ a two-part test to evaluate "waiver of issue" claims: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id.* at 605–06 (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986)). Stated somewhat differently, "[a] defendant may establish that his appellate counsel's performance was deficient where counsel failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision." *Ben–Yisrayl v. State,* 738 N.E.2d 253, 261 (Ind.2000).

On direct appeal, counsel presented three issues: (1) whether evidence that Fisher had previously fired a gun at one of the witnesses was improperly admitted; (2) whether the trial court properly instructed the jury on the defense of accident; and (3) whether the evidence was sufficient to support Fisher's conviction. *See Fisher,* No. 45A04–9405–CR–188, slip op. at 2. As to issue one, counsel for Fisher argued that the probative value of the evidence was outweighed by its prejudicial impact and therefore should have been excluded under Indiana Evidence Rule 403. *Id.* at 3. The Court of Appeals disagreed because the evidence tended to disprove Fisher's defense that he shot the victim by accident. *Id.* at 4. As to issue number two, Fisher argued the trial court erred in giving its own jury instruction regarding the defense of accident. The Court of Appeals determined that Fisher waived this issue because although submitting an accident instruction, Fisher did not object to the instruction actually given by the trial court. *Id.* at 4. Concerning Fisher's sufficiency of the evidence claim, the Court of Appeals observed that Fisher's argument was merely a request to reweigh the evidence, which the Court declined to do.

■ The issues counsel raised on direct appeal had little chance of success. Courts of review rarely reverse a jury's guilty verdict on sufficiency of evidence grounds; the law is settled that failure to object to a jury instruction given by the trial court waives the issue for review; and even where meritorious, claims of Rule 404 violations, as with other evidentiary rules, are subject to harmless error analysis. By contrast the unraised issue stands on a different footing. We agree with our colleagues that "the state of the law clearly requiring instructions for inherently lesser-included offenses was not settled until after Fisher's direct appeal had been decided." *Fisher,* 785 N.E.2d at 326. However, in our view this fact is not dispositive

of whether the lesser-included instruction issue was significant, obvious, and clearly stronger than the issues counsel presented on direct appeal.[1]

There is no question that at the time of Fisher's trial and appeal in 1993–1995, the law on the matter of lesser-included offenses was in a state of flux. One line of authority characterized by this Court's opinions in *Sills v. State*, 463 N.E.2d 228 (Ind.1984) and *Compton v. State*, 465 N.E.2d 711 (Ind.1984) advanced the view that the trial court was not required to give an instruction on an alleged lesser-included offense where the charging information closely tracked the statute. *See Compton*, 465 N.E.2d at 713; *Sills*, 463 N.E.2d at 234. This was the apparent ground on which the trial court relied in rejecting Fisher's tendered instruction. On the other hand, another line of authority characterized by this Court's opinions in *Aschliman v. State*, 589 N.E.2d 1160 (Ind. 1992) and *Lynch v. State*, 571 N.E.2d 537 (Ind.1991) stood for the proposition that the wording of a charging document is not necessarily determinative of whether the trial court should give an instruction on a lesser-included offense. *See Aschliman*, 589 N.E.2d at 1161; *Lynch*, 571 N.E.2d at 539.

Acknowledging the ambiguity of the law governing lesser-included offenses, this court finally clarified the matter in *Wright v. State*, 658 N.E.2d 563 (Ind.1995). Writing "to resolve the unfortunate confusion that has arisen in the cases that address when a trial court should instruct juries on lesser included offenses," *id.* at 565, we developed a three-part test that trial courts should perform when called upon by a party to instruct a jury on a lesser-included offense of the crime charged. First, the trial court must compare the statute defining the crime charged with the statute defining the alleged lesser-included offense to determine if the alleged lesser-included offense is inherently included in the crime charged. *Id.* at 566. Second, if a trial court determines that an alleged lesser-included offense is not inherently included in the crime charged under step one, then it must determine if the alleged lesser-included offense is factually included in the crime charged. *Id.* at 567. If the alleged lesser-included offense is neither inherently nor factually included in the crime charged, the trial court should not give an instruction on the alleged lesser-included offense. *Id.* Third, if a trial court has determined that an alleged lesser-included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. *Id.* "[I]t is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense" if there is such an evidentiary dispute. *Id.*

Although *Wright* disapproved of or overruled in part several cases from this Court as well as the Court of Appeals, *Wright* nonetheless relied upon then-existing case

---

1. We also note that counsel's failure to raise as an issue the refused jury instruction was not based on any strategic decision. *See Ben–Yisrayl*, 738 N.E.2d at 261. The post-conviction court specifically found, "Appellate counsel testified that he had no strategic reason for not raising the lesser included instruction issue on direct appeal. In fact, appellate counsel said that he could not recall seeing the instruction on reckless homicide which the defense tendered and the court denied as it appears on page 57 of the Record of Proceedings." Appellant's App. at 130.

authority to fashion a three-part test. For example we observed, "At least since our decision in *Lawrence v. State,* (1978), 268 Ind. 330, 337, 375 N.E.2d 208, 212, analysis of this issue has spoken of two steps. We believe that the explicit three-step analysis above should eliminate any confusion that may have been caused by *Lawrence's* two-step approach." *Id.* It is true that appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in existing law. *Trueblood v. State,* 715 N.E.2d 1242, 1258 (Ind.1999). However, precisely because the law in this area was unsettled and in a state of flux at the time of Fisher's trial and appeal, the issue of whether the trial court erred in refusing to give a lesser-included instruction on reckless homicide was both significant and obvious as well as clearly stronger than the issues raised. *See Pelmer v. White,* 877 F.2d 1518, 1523 (11th Cir.1989) ("That the law is unsettled on a point does not mean the legal basis for arguing the point is unavailable."). And appellate counsel's failure to present the issue on direct appeal was not a strategy-based decision. *See supra* n. 1. Indeed had counsel raised the issue, the analysis now widely referred to as the *"Wright"* test could very well have been known as the *"Fisher* test."

■ In any event applying the analysis to the facts of this case, as to the first two parts of the *Wright* test, the only element distinguishing murder and reckless homicide is the defendant's state of mind: reckless homicide occurs when the defendant "recklessly" kills another human being and murder occurs when the killing is done "knowingly" or "intentionally." *Compare* Ind.Code § 35–42–1–5 *with* I.C. § 35–42–1–1(1). Reckless conduct is action taken in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

I.C. § 35–41–2–2(c). By contrast, a person engages in conduct "knowingly" if the person is aware of a "high probability" that he or she is doing so. I.C. § 35–41–2–2(b). Thus, reckless homicide is an inherently included lesser offense of murder. *See Davenport v. State,* 749 N.E.2d 1144, 1150 (Ind.2001). The determinative issue is whether the evidence produced a serious evidentiary dispute concerning Fisher's state of mind that would justify giving the requested instruction.

■ This is an appeal from the denial of post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Saylor v. State,* 765 N.E.2d 535, 547 (Ind.2002). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Saylor,* 765 N.E.2d at 547. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben–Yisrayl,* 729 N.E.2d at 106 (quotation omitted). In this review, findings of fact are accepted unless clearly erroneous, but no deference is accorded conclusions of law. *Woods v. State,* 701 N.E.2d 1208, 1210 (Ind.1998). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

Based on an examination of the trial transcript and record of proceedings, the

post-conviction court concluded there was no serious evidentiary dispute concerning Fisher's culpability. Specifically the post-conviction court found that Fisher: (1) had served in the military and had been trained in the use of firearms; (2) brought the handgun to the restaurant that night; (3) knew the handgun was loaded; (4) placed the handgun in a position of easy access (in his back pocket); (5) drew the handgun and pointed it at the victim stating that he was not throwing beer but slinging lead; (6) poked the victim in the back with the handgun; and (7) fired the weapon at the victims back at point blank range. Appellants App. at 132–33. The post-conviction court also determined that the handgun was semi-automatic and if functioning properly the trigger must have been pulled in order to fire. *Id.* at 132. On the other hand, according to the post conviction court, if the pin was faulty, as Fisher contended, then he was aware of that fact and based on his military training would appreciate the dangers of a malfunctioning deadly weapon. *Id.*

 It is undeniable that the evidence recounted by the post-conviction court supports the jury's guilty verdict of murder. However when addressing the question of whether there is a serious evidentiary dispute, the court must evaluate the evidence presented by both parties. *Wright,* 658 N.E.2d at 567. In support of his claim, Fisher contends that *the* central issue at trial was his culpability. During opening statements trial counsel said, among other things, "The issue is not going to be whether or not Darryl Fisher actually fired the weapon. Mr. Fisher is going to testify, he will tell you what occurred. What is going to be the issue is whether or not he knowingly or intentionally fired that weapon or the other side of it, whether or not it was accidental." Appellant's App. at 147. At trial Fisher testi-

fied that he did not intend to shoot Kizmond but was only "playing around" with the gun. Tr. at 302. After the gun discharged, Fisher testified that he "started screaming, I'm sorry, I'm sorry" and dialed 911 for an ambulance. *Id.* at 299, 313. This testimony was corroborated by at least two State's witnesses. Enoch Boyd testified that when the gun discharged, "[Fisher] said oh, man, I'm sorry," and "was running around crying with the gun in his hand." *Id.* at 126, 176. La' Montrell Thomas testified that Fisher had played around with a gun before and therefore did not believe Fisher was serious about shooting anyone when he pointed the weapon at Kizmond. *Id.* at 219. As a result when Thomas saw Fisher with the handgun, Thomas continued to look "at the menu." *Id.* at 222–23. Thomas also testified that once Kizmond was struck, Fisher seemed "[s]tunned like that [sic] he did it or something . . . ." *Id.* at 223.

Although rejecting Fisher's defense of accident, which would thereby have completely absolved Fisher of any liability for his conduct, the jury could have returned a conviction of reckless homicide instead of murder depending on how it weighed and credited all of the evidence. *See Nordstrom v. State,* 627 N.E.2d 1380, 1383 (Ind. Ct.App.1994) (holding reckless homicide proven beyond a reasonable doubt where defendant shot wife at close range allegedly believing gun would not discharge), *trans. denied.* As such, the trial court's refusal to instruct the jury on the lesser-included offense of reckless homicide was reversible error. And appellate counsel's failure to present this claim on direct appeal amounted to ineffective assistance. The post-conviction court's finding to the contrary leaves us with a definite and firm conviction that a mistake has been made.

### Conclusion

We reverse the judgment of the post-conviction court. This cause is remanded

for further proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.