**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**HAROLD FERRIN**
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HAROLD FERRIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1210-PC-839 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
The Honorable Jeffrey L. Marchal, Master Commissioner
Cause No. 49G06-0807-PC-174418

**October 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Harold Ferrin, *pro se*, appeals the post-conviction court's denial of his petition for post-conviction relief. Ferrin raises two issues which we consolidate and restate as whether the court erred in denying his petition for post-conviction relief. We affirm.

FACTS AND PROCEDURAL HISTORY

The relevant facts as discussed in Ferrin's direct appeal follow:

> On July 10, 2008, R.F. (Mother) was bathing her six-year-old daughter, M.Y., when she noticed redness on M.Y.'s genital area. The next day, Mother decided to take M.Y. to Ferrin's house. M.Y. refers to Ferrin as "Papaw Dick" because her stepfather is Ferrin's son. Tr. p. 114. While in transit, Mother asked M.Y. if anyone had "touched her down there." Id. at 120. M.Y. covered her mouth and said that she could not tell because "Papaw Dick said she would be in trouble." Id. After Mother reassured M.Y. that she was not in trouble and that she had not done anything wrong, M.Y. responded, "Yes, I did. I went like this." Id. M.Y. moved her hand in a back and forth motion as she told her Mother what she had done to Ferrin. Mother immediately took M.Y. to St. Vincent's hospital to be examined.
>
> M.Y. was examined by Dr. Jason Little. Dr. Little noted that M.Y. had minimal redness on her genital area, but that the exam was otherwise normal. Dr. Little explained that such redness is usually attributable to poor hygiene and that the exam did not reveal whether M.Y. had been sexually abused.

Ferrin v. State, No. 49A05-0907-CR-429, slip op. at 2-3 (Ind. Ct. App. January 12, 2010).

On July 23, 2008, the State charged Ferrin with two counts of child molesting as class A felonies and two counts of child molesting as class C felonies. Id. at 3. On May 18, 2009, Ferrin's jury trial commenced. Id. M.Y. testified that she touched Ferrin's "private" in his bedroom when his clothes were off. Id. M.Y. stated that she had both hands on Ferrin's "private" and that she rubbed it with an "up and down" motion. Id. M.Y. explained that it was Ferrin's idea to put lotion on her hand, and that she had

2

touched him this way more than once, including one time in the barn where he "peed" on the rug.  Id.

M.Y. further testified that she and Ferrin were not wearing clothes when his "private" and finger touched her "little girl."  Id.  In addition, neither of them was wearing clothes when Ferrin had M.Y. put her finger inside his anus.  Id.  After each of these incidents, Ferrin admonished M.Y. not to tell anyone.  Id.  Ferrin denied having any sexual activity with M.Y., but admitted that he had touched her vagina and buttocks when he applied diaper rash cream because she was red all of the time.  Id.

After three to four hours of deliberating, the jury sent out a note stating, "A few of the jurors have reasonable doubt and feel they will not [ ]/cannot . . . change their opinion based on the evidence we have on all counts."  Id. at 4.  Defense counsel requested that the trial court ask the jury whether they were at an impasse, while the State urged the trial court to instruct the jury to continue deliberations.  Id.  Over defense counsel's objection, the trial court instructed the jury to continue deliberations, but noted that at some point, if a decision was not reached, it would have to ask the jury whether it was at an impasse.  Id.  Less than an hour after the trial court had instructed the jury to continue deliberations, the jury found Ferrin not guilty on Count I, but guilty on Counts II, III, and IV.  Id.

At the June 4, 2009 sentencing hearing, the trial court concluded that Ferrin's lack of criminal history, his history of gainful employment, and his service in the National Guard were mitigating circumstances.  Id.  In aggravation, the court observed that Ferrin had violated a position of trust.  Id.  The court sentenced Ferrin to consecutive terms of

thirty years and four years on Counts II and III respectively, but did not enter judgment on Count IV because of double jeopardy concerns. Id.

On direct appeal, Ferrin argued that the trial court abused its discretion by not asking the jury if it was at an impasse. Id. at 2. Ferrin also challenged his thirty-year sentence and argued that the trial court erroneously applied Ind. Code § 35-50-2-2(i) in violation of the prohibitions against *ex post* facto laws contained in the United States and Indiana Constitutions. Id. We rejected Ferrin's argument that reversal was required by the trial court's failure to ask the jury if it was at an impasse and utilizing Indiana Jury Rule 28 to assist the jury. Id. at 5. With respect to his sentence, we held that the trial court erroneously believed it was required to sentence Ferrin to an executed term of thirty years. Id. at 9. Accordingly, we remanded to give the trial court the opportunity to resentence Ferrin on Count II. Id. at 9-10.

On April 30, 2010, Ferrin, *pro se*, filed a petition for post-conviction relief. In May 2012, Ferrin filed a motion to amend his petition, and the court granted the motion. In August 2012, Ferrin filed another motion to amend his petition, and the court again granted the motion. On September 20, 2012, the court held an evidentiary hearing, and Ferrin's appellate counsel and trial counsel testified. Ferrin did not testify nor did he introduce the trial record or other exhibits. On September 24, 2012, the court denied Ferrin's petition for post-conviction relief.

## DISCUSSION

Before discussing Ferrin's allegations of error, we note that although Ferrin is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are

4

required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

To the extent that Ferrin fails to put forth a cogent argument, cite to authority, or cite to the record, we conclude that such arguments are waived. See, e.g., Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument); Smith v. State, 822 N.E.2d

5

193, 202-203 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), trans. denied. We also observe that Ferrin did not offer into evidence or ask the court to take judicial notice of the trial transcript, the charging information, or other documents related to the trial record and therefore the trial record was not before the court for consideration.[1] See Mitchell v. State, 946 N.E.2d 640, 644-645 (Ind. Ct. App. 2011) (stating that Ind. Evid. Rule 201(b)(5)[2] allows a post-conviction court to judicially notice the transcript of the evidence from the petitioner's underlying criminal proceedings, and noting that the petitioner did not offer his trial record into evidence at the post-conviction hearing or ask the post-conviction court to take judicial notice of the record, that the court did not judicially notice the record *sua sponte*, and that the trial record therefore was never before the post-conviction court for consideration), reh'g denied, trans. denied.

Ferrin appears to argue that Ind. Code § 35-42-4-3 does not contain an element of intent and is overbroad as it punishes protected activities such as natural childbirth or "using a suppository on an infant." Appellant's Brief at 11. Without citation to the record, Ferrin argues that "[i]t is undisputed fact that the charging information failed to allege criminal intent as an element of child molesting by deviate sexual conduct." Id. at 12. The State argues that Ferrin has waived these claims.

---

[1] At one point during the hearing, the post-conviction court stated: "Well, the [trial] record is not in." Transcript at 37. The court's order states: "No exhibits were admitted at the evidentiary hearing. Notably, the record of proceedings was not admitted. Ferrin's failure to admit the record of proceedings makes it difficult for the Court to review his claim of ineffective assistance of counsel." Appellant's Appendix at 85.

[2] Ind. Evid. Rule 201(b) provides that "[a] court may take judicial notice of law. Law includes . . . records of a court of this state . . . .").

Ferrin did not raise these claims on direct appeal and does not allege that his trial counsel or appellate counsel were ineffective on these bases. Consequently, we conclude that Ferrin waived these claims. See Reed v. State, 866 N.E.2d 767, 768 (Ind. 2007) (holding that only issues not known at the time of the original trial or issues not available on direct appeal may be properly raised through post-conviction proceedings); Sanders v. State, 765 N.E.2d 591, 592 (Ind. 2002) (holding that in "post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal" and that it is wrong to review the petitioner's fundamental error claim in a post-conviction proceeding); Lambert v. State, 743 N.E.2d 719, 726 (Ind. 2001) (holding that post-conviction procedures do not provide a petitioner with a "super-appeal" or opportunity to consider freestanding claims that the original trial court committed error and that such claims are available only on direct appeal), reh'g denied, cert. denied, 534 U.S. 1136, 122 S. Ct. 1082 (2002); Hough v. State, 690 N.E.2d 267, 275 (Ind. 1997) (holding that the petitioner's argument that a statute was unconstitutional on its face and as applied to him was waived because it was available but not argued on direct appeal), reh'g denied, cert. denied, 525 U.S. 1021, 119 S. Ct. 550 (1998).

We will address Ferrin's arguments to the extent that he raises issues within the context of ineffective assistance. Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ben-

7

Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), reh'g denied), reh'g denied, cert. denied, 534 U.S. 830, 122 S. Ct. 73 (2001). We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. Williams v. State, 724 N.E.2d 1070, 1078 (Ind. 2000), reh'g denied, cert. denied, 531 U.S. 1128, 121 S. Ct. 886 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Perez v. State, 748 N.E.2d 853, 854 (Ind. 2001). "[L]ogic dictates that 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Hilliard v. State, 609 N.E.2d 1167, 1169-1170 (Ind. Ct. App. 1993) (quoting Strickland, 466 U.S. at 696, 104 S. Ct. at 2069)). Failure to satisfy either prong will cause the claim to fail. French, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Morgan v. State, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a

8

defendant must offer strong and convincing evidence to overcome this presumption." Williams v. State, 771 N.E.2d 70, 73 (Ind. 2002).  Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. Clark v. State, 668 N.E.2d 1206, 1211 (Ind. 1996), reh'g denied, cert. denied, 520 U.S. 1171, 117 S. Ct. 1438 (1997).  "Reasonable strategy is not subject to judicial second guesses." Burr v. State, 492 N.E.2d 306, 309 (Ind. 1986).  We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." Whitener v. State, 696 N.E.2d 40, 42 (Ind. 1998).

A.    Trial Counsel

Ferrin appears to argue that his trial counsel was ineffective for: (1) failing to move to have the charges severed prior to trial; (2) failing to request a mistrial when the jury made a request of the court to allow several members of the jury to be allowed to call home to make arrangements for child care; and (3) failing to present a video of the interview of M.Y. or the child hearsay hearing.

1.    Severance

Ferrin argues that his trial counsel was ineffective for failing to move to have the four charges severed prior to trial.  The State argues that "[s]ince Ferrin was acquitted of Count I, and the trial court vacated the jury's verdict on Count IV, only Count II and Count III remain of consequence." Appellee's Brief at 15.  The State contends that Counts II and III were not joined solely on the grounds that they were of similar character

9

but argues that they involved the same victim and the same time period and were based on a series of connected acts.

Two or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses: "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35-34-1-9 (2004). "Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." Ind. Code § 35-34-1-11(a) (2004). See also Brown v. State, 650 N.E.2d 304, 305-306 (Ind. 1995). "In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense . . ." Ind. Code § 35-34-1-11(a). In doing so, the trial court is to consider: (1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. Id.; Brown, 650 N.E.2d at 305-306.

Ferrin does not direct our attention to the post-conviction transcript to indicate that he asked his trial counsel questions regarding severing the counts. The record does not include the charging information, and, based upon this court's opinion on direct appeal, the charges involved actions that allegedly occurred between June 16, 2007, and June 15,

2008, and involved M.Y. <u>Ferrin</u>, slip op. at 3. We cannot say that Ferrin has demonstrated that his trial counsel was ineffective on this basis.

    2.    <u>Mistrial</u>

Ferrin argues that his trial counsel was ineffective for failing to request a mistrial when the jury made a request of the court to allow several members of the jury to be allowed to call home to make arrangements for child care. He states that the jury sent a third note asking the court to allow several jurors to call home to arrange for child care and that "[t]his third note does not appear in the trial transcripts but Mr. Ferrin knows it occurred." Appellant's Brief at 15. The State argues that Ferrin has provided insufficient evidence to support his claim and that trial counsel requested a mistrial at one point during the deliberations.

Ferrin did not testify at the post-conviction hearing regarding a third note nor did he introduce the trial transcript into evidence. Trial counsel testified that she did not recall or vaguely recalled that there were several jurors who needed to call home to make arrangements for child care and did not recall whether the court allowed the jurors to call home to make arrangements. Trial counsel also testified that she asked for a mistrial after the court at one point sent the jury back to deliberate. Under the circumstances, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. <u>See</u> <u>Tapia v. State</u>, 753 N.E.2d 581, 588 n.10 (Ind. 2001) ("It is practically impossible to gauge the performance of trial counsel without the trial record, as we have no way of knowing what questions counsel asked, what objections he leveled, or what arguments he presented.").

3.      Failure to Present Evidence

Ferrin contends that his trial counsel was ineffective for failing to challenge the credibility of the victim with the video of the interview of M.Y. or a video of the child hearsay hearing.  The State argues that trial counsel did not render ineffective assistance by making a strategic decision to exclude the forensic interview of M.Y. and that Ferrin has not overcome the presumption that trial counsel's strategic decision was reasonable.

Ferrin did not introduce the trial transcript, the video of the interviews with the victim, or the transcripts of the interviews.  During direct examination, trial counsel testified that she thought there were inconsistencies in the victim's statements that were significant enough to question the victim's credibility, that in hindsight she believed it was a mistake to move to suppress the tapes, and that she did not "recall the specific details" and later stated "I really don't remember specifically what accusations were made when."  Transcript at 22, 25.  When asked why she made a motion to exclude the taped interview of the child, trial counsel stated: "At the time I thought that – I didn't think it would be beneficial to keep showing the jury, the child making accusations against you."  Id. at 30.  Trial counsel also stated: "It was a decision that I weighed heavily at the time and I made the decision I did for the strategic reasons I described and all I can say is if I had to do it over again, I would show the tape."  Id. at 32.  Trial counsel also stated: "I had strategic reasons for everything that I did or did not do at the trial.  But again hindsight being 20/20, there are some decisions I wish I had gone the other way on, such as showing the videotape."  Id. at 40-41.

12

On cross-examination, trial counsel conceded that she was aware of the discrepancies when she made the choice to move to exclude the videotapes of the interviews and that she did not know whether playing the tape would have made a difference. Trial counsel also indicated that the balancing was having a "little child repeat the allegations three or four separate times, right and balancing that with the potential benefit of having her – pointing out that she didn't say exactly the same way three different times." Id. at 44. Again, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

B.    Appellate Counsel

Ferrin argues that his appellate counsel failed to argue that the trial court erred by not implementing Jury Rule 28. Ferrin also alleges that his appellate counsel was ineffective for failing to argue that the evidence was insufficient.

The State argues that appellate counsel raised the issue regarding Jury Rule 28 and that Ferrin's mere conclusory assertion that appellate counsel could have argued the issue better does not allow him to circumvent the rule of *res judicata*. The State also argues that Ferrin has failed to show that appellate counsel's strategic decision not to dispute the sufficiency of the evidence was unreasonable and that such an issue was clearly stronger than the two issues raised by appellate counsel.

Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. Bieghler v. State, 690 N.E.2d 188, 193-195 (Ind. 1997) (citing Lissa Griffin, *The Right to*

*Effective Assistance of Appellate Counsel*, 97 W. VA. L. REV. 1, 21-22 (1994)), reh'g denied, cert. denied, 525 U.S. 1021, 119 S. Ct. 550 (1998). Ferrin raises a claim under the second and third categories.

His appellate counsel argued that the trial court erred by not asking the jury if it was at an impasse and utilizing Indiana Jury Rule 28 to assist the jurors, and highlighted the fact that the jury returned a verdict thirty minutes after the trial court instructed the jurors to continue deliberations. Ferrin, slip op. at 5-6. We cannot say that Ferrin has sufficiently developed an argument that his appellate counsel failed to present the issue well or has demonstrated that reversal is required on this basis.

With respect to appellate counsel's failure to raise a sufficiency of the evidence claim, we observe that to prevail on a claim about appellate counsel's failure to raise an issue, the first prong of the Strickland test requires Ferrin to show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. Carter v. State, 929 N.E.2d 1276, 1278 (Ind. 2010). We "consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance." Bieghler, 690 N.E.2d at 194. In Bieghler, the Court approved the two-part test used by the Seventh Circuit to evaluate these claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. Id. (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

The following exchange occurred at the post-conviction hearing between Ferrin and his appellate counsel:

Q.    . . . [W]hy then if there was no evidence, did you not argue the sufficiency of the evidence on my appeal?

A.    Because the standard of review on sufficiency is the evidence most favorable to conviction.  In this circumstance, you had the alleged victim testifying, which supported there was sufficient evidence.  You would have lost that argument on appeal.  The only way I could raise an argument is under incredible dubiosity, which is a pretty weak sufficiency of the evidence argument.

Transcript at 10.  Moreover, again, Ferrin did not introduce the transcript from the trial. Under the circumstances, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

For the foregoing reasons, we affirm the post-conviction court's denial of Ferrin's petition for post-conviction relief.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.