**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 05 2014, 6:15 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**GARLAND W. THOMESON**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GARLAND W. THOMESON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1403-PC-106 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1110-PC-13

November 5, 2014

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Garland W. Thomeson appeals the denial of his petition for post-conviction relief.

Thomeson raises two issues, which we revise and restate as:

I.      Whether the post-conviction court abused its discretion in ordering him to proceed by affidavit; and

II.     Whether the post-conviction court erred in denying his petition for relief.

We affirm.

FACTS AND PROCEDURAL HISTORY

The relevant facts as discussed in Thomeson's direct appeal follow:

M[]L[]B[] was born on June 19, 1993, and had been living in Tippecanoe County with Thomeson—her stepfather—and her mother since she was six years old. Sometime in June 2004, MLB told her Aunt, Amber Gleason, that Thomeson was molesting her. Specifically, MLB told Gleason that Thomeson was touching her in places where "he was not supposed to touch me." Appellant's App. p. 85-86. MLB requested that Gleason keep their conversation a secret because she was scared that Thomeson might harm her or her family. However, Gleason told Jason Burke, MLB's father, about the conversation. Burke and his girlfriend then notified a member of the Lafayette Police Department about the alleged incidents.

On June 11, 2004, detectives from the Lafayette Police Department, as well as Christine Kaufman, an employee of the Child Protective Services Agency (Child Protective Services), arrived at MLB's home to investigate the molestation reports. Shortly after speaking with MLB and her mother, the police officers transported MLB to the Heartford House, a facility where victims of sexual abuse are routinely taken for interviews. During a conversation with Kaufman, MLB explained that her mother had informed her about "good touches and bad touches." Appellant's App. p. 205. MLB also identified for Kaufman various body parts from an anatomy drawing. She told Kaufman that her "buttocks, vagina and boobs" were body parts that she "wouldn't want to be touched on." Id. at 210. She told Kaufman that Thomeson had touched those body parts, and that such incidents had "happened alot of times." Id. at 211.

MLB told Kaufman that the most recent incident had occurred "yesterday." Id. at 212. On that occasion, Thomeson found MLB

2

awake in her bedroom where she was reading a book entitled "Double Trouble," and he told her to "come on out." Id. at 214. While sitting on a couch in the living room, Thomeson touched MLB's "vagina and the boobs" with his hands. Id. at 213. MLB also told Kaufman that sometimes when these incidents occur, Thomeson would tell her to "come give him lovins." Id. at 216. She would lay on top of Thomeson and he would touch her "buttocks, boobs, and vagina." Id. She informed Kaufman that the first incident occurred "before last year" when MLB was "8 or 9." Id. at 218.

MLB further explained to Kaufman that sometimes Thomeson would rub her "down in there" underneath her clothes. Id. She told Kaufman that such incidents occurred at least once a week, and that each time they occurred it was "generally all the same thing." Id. at 219, 221. MLB stated that Thomeson only touched her with his hands. However, during some of the incidents, Thomeson would have her touch his penis with her hand. MLB explained that the molestations occurred not only (1) in June 2004, the last time Thomeson touched her, but also at least once in (2) May 2004, (3) April 2004, (4) March, 2004 (5) February 2004, (6) sometime between June and December 2003, (7) between January and May of 2003, and (8) at least once in 2002. All of these incidents involved either Thomeson touching MLB with his hands or MLB touching Thomeson.

The State ultimately charged Thomeson with nine counts of child molesting. Each of the charges alleged that Thomeson "did with [MLB] perform or submit to any touching or fondling of either [MLB], the child, or [Defendant], with the intent to arouse or satisfy the sexual desires of either [MLB], the child, or [Defendant]." Appellant's App. p. 24-32. Each count differed only as to the date of the alleged molestation. In particular, Count I charged that a molestation occurred on or about June 10, 2004, Count II charged that a molestation occurred on or about May 2004, Count III charged that a molestation occurred on or about April 2004, Count IV charged that a molestation occurred on or about March 2004, Count V charged that a molestation occurred on or about February 2004, Count VI charged that a molestation occurred on or about January 2004, Count VII charged that a molestation occurred on or about June 2003 to December 2003, Count VIII charged that a molestation occurred on or about January 2003 to May 2003, and Count IX charged that a molestation occurred on or about June 2002, to December 2002.

Following a jury trial that commenced on July 12, 2005, Thomeson was found guilty as charged. At the sentencing hearing conducted on August 15, 2005, the trial court identified Thomeson's criminal history and need for correctional treatment because prior attempts at rehabilitation had failed, as

3

aggravating factors. As a mitigating factor, the trial court found that no force or violence was used in committing the crimes. In the end, Thomeson was sentenced to consecutive sentences on all counts, thus resulting in an aggregate sentence of forty years. . . .

Thomeson v. State, 79A02-0508-CR-839, slip op. at 2-5 (Ind. Ct. App. Jul. 18, 2006), trans. denied. Thomeson appealed and argued that the charging information was defective, that the evidence was insufficient to support his convictions, that the trial court abused its discretion in sentencing, and that his sentence was inappropriate, and this court affirmed Thomeson's convictions and sentence. Id. at 5-14.

On October 19, 2011, Thomeson filed a petition for post-conviction relief alleging that the trial court erred with respect to instructing the jury, that his trial counsel was ineffective for failing to object to or submit certain jury instructions, and that his appellate counsel was ineffective for failing to raise the issue of the jury instructions on direct appeal. He argued that the court did not define "knowingly" in its preliminary instructions, that the court "corrected this problem" by "adding 'Knowingly' to the charging information and giving a definition of 'Knowingly' and 'Intelligently' to the jury upon the completion of the trial," and that "[t]his not only caused the jury to be confused, it added an element of these crimes that they had not been instructed on at the start of this trial . . . ." Appellant's Appendix at 31. He argued that "he would argue during a new trial he was intoxicated to the point he may have touched the victim, but he doesn't remember it and did not 'KNOWINGLY' do so . . . ." Id. at 32. Thomeson argued his trial counsel "should have caught such a blatant and fundamental error like this improper preliminary jury instruction" and was ineffective for failing to object to the final jury instruction. Id. at 33. Finally, Thomeson argued he was

4

deprived of effective assistance of appellate counsel when counsel failed to raise the ineffective assistance of his trial counsel or the "issue of improper preliminary instruction on direct appeal." Id. at 34.

On March 23, 2012, the post-conviction court entered an order which found that the petition could be submitted by affidavits pursuant to Post-Conviction Rule 1, Section 9, and directed the parties to submit affidavits. On May 31, 2012, Thomeson filed an affidavit in support of his petition in which he stated that he "was an alcoholic during the alleged crimes and often did not remember days at a time" and that the jury instructions "were confusing to the jury in not containing the element of 'Knowingly' throughout the trial only to then be added in the final instructions." Id. at 55.

On February 12, 2014, the post-conviction court denied Thomeson's petition for post-conviction relief. The court found that voluntary intoxication is not a defense, that Thomeson presented no evidence which would show a different outcome during trial, and that he provided no authority showing prejudice in whether the certain jury instructions were provided either in preliminary or final instructions.

## DISCUSSION

Before discussing Thomeson's allegations of error, we note that although he is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-

conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id.

I.

The first issue is whether the post-conviction court abused its discretion in ordering Thomeson to proceed by affidavit pursuant to Post-Conviction Rule 1, Section 9. Post-Conviction Rule 1, Section 9(b) provides in part that, "[i]n the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing." We will review a post-conviction court's decision to forego an evidentiary hearing when affidavits have been submitted under Rule 1(9)(b) under an abuse of discretion standard. Smith v. State, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005), trans. denied.

Thomeson asserts he was denied an opportunity to present testimony of trial counsel in

6

support of his claim. We hold in Part II below that Thomeson's trial counsel was not ineffective for failing to object to the challenged jury instructions or to tender an instruction regarding the *mens rea* element of the charged offenses based on the molestation statute at the time of Thomeson's offenses, the intoxication statutes found at Ind. Code §§ 34-41-2-5 and 3-5, the Indiana Supreme Court's opinion in <u>Sanchez v. State</u>, 749 N.E.2d 509 (Ind. 2001), regarding the relationship between voluntary intoxication and *mens rea*, and the language of the trial court's preliminary and final jury instructions. The claims raised in Thomeson's petition related to the adequacy of the jury instructions regarding the *mens rea* element of the charged offenses and did not raise issues which required any factual determination, and Thomeson fails to establish how the testimony of his trial counsel or an evidentiary hearing would have aided him. Accordingly, the post-conviction court did not abuse its discretion in ordering the parties to proceed by affidavit. <u>See</u> <u>Smith</u>, 822 N.E.2d at 201 (holding that "other than claiming that the affidavits he and the State submitted raised issues of fact, Smith has failed to show how an evidentiary hearing would have aided him").

II.

The next issue is whether the post-conviction court erred in denying Thomeson's petition for relief. Thomeson asserts that his trial counsel was ineffective for failing to object and tender a proper instruction to allegedly erroneous jury instructions regarding the *mens rea* element of the charged offenses and that his appellate counsel was ineffective for failing to raise the matter of the jury instructions on direct appeal. The State argues that Thomeson's "entire ineffectiveness claim rests upon the false proposition that his state of intoxication

7

precluded the needed mens rea." Appellee's Brief at 10. The State maintains that, even if Thomeson's counsel had challenged the jury instructions on *mens rea* on the grounds that Thomeson was intoxicated, Thomeson could not have prevailed and thus the post-conviction court correctly denied Thomeson relief.

To the extent that Thomeson raised or raises freestanding claims regarding the jury instructions, these arguments are waived. See Lambert v. State, 743 N.E.2d 719, 726 (Ind. 2001) (holding that post-conviction procedures do not provide a petitioner with an opportunity to present freestanding claims that contend the original trial court committed error), reh'g denied, cert. denied, 534 U.S. 1136, 122 S. Ct. 1082 (2002).

Turning to Thomeson's ineffective assistance claims, we observe that to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Coleman v. State, 694 N.E.2d 269, 272 (Ind. 1998) (citing Strickland v. Washington, 466 U.S. 668, 687-696, 104 S. Ct. 2052, 2064-2069 (1984), reh'g denied). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Perez v. State, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. French, 778 N.E.2d at 824. Most ineffective

8

assistance of counsel claims can be resolved by a prejudice inquiry alone. Id. We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. Williams v. State, 724 N.E.2d 1070, 1078 (Ind. 2000), reh'g denied, cert. denied, 531 U.S. 1128, 121 S. Ct. 886 (2001).

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Morgan v. State, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Williams v. State, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. Clark v. State, 668 N.E.2d 1206, 1211 (Ind. 1996), reh'g denied, cert. denied, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." Burr v. State, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." Whitener v. State, 696 N.E.2d 40, 42 (Ind. 1998).

Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. Bieghler v. State, 690 N.E.2d 188, 193-195 (Ind. 1997), reh'g denied, cert. denied, 525 U.S. 1021, 119 S. Ct. 550 (1998). To prevail on a claim about appellate counsel's failure to raise an issue, the

9

first prong of the Strickland test requires the claimant to show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. Carter v. State, 929 N.E.2d 1276, 1278 (Ind. 2010). We "consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance." Bieghler, 690 N.E.2d at 194.

At the time of the offenses, Ind. Code § 35-41-2-5 provided that "[i]ntoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of IC 35-41-3-5." Ind. Code § 35-41-3-5 provided that "[i]t is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body: (1) without his consent; or (2) when he did not know that the substance might cause intoxication."

In Sanchez v. State, the Indiana Supreme Court clarified the application of these statutes. 749 N.E.2d 509 (Ind. 2001). The Court "made it clear that the statutes do not allow the defense of voluntary intoxication to negate mens rea." Haggard v. State, 771 N.E.2d 668, 672-673 (Ind. Ct. App. 2002) (citing Sanchez, 749 N.E.2d at 517), trans. denied. The Court found that "the voluntarily intoxicated offender [is] at risk for the consequences of his actions, even if it is claimed that the capacity has been obliterated to achieve the otherwise requisite mental state for a specific crime." Id. at 673 (citing Sanchez, 749 N.E.2d at 517).

10

The Court held that "[t]he statute redefines the requirement of mens rea to include voluntary intoxication, in addition to the traditional mental states, i.e., intentionally, knowingly, and recklessly. Thus, evidence of voluntary intoxication does not negate the mens rea requirement. . . . Rather, it satisfies this element of the crime." Id. (citing Sanchez, 749 N.E.2d at 520).

Based upon Sanchez, we conclude that, had Thomeson's trial counsel objected to the jury instructions to which Thomeson points or submitted what Thomeson appeared or appears to claim to be a correct statement of law, any *mens rea* instruction suggesting that voluntary intoxication could be a defense would properly have been denied by the trial court. Thomeson's trial counsel did not provide ineffective assistance of counsel for failing to challenge the jury instructions in this regard. See Haggard, 771 N.E.2d at 672-673 (noting that Haggard's "entire argument . . . fail[ed] to acknowledge . . . Sanchez," concluding that, "had Haggard's trial counsel objected to the tendered instructions and/or submitted what Haggard claims to be the correct statement of law, any objection would have been overruled and any instruction stating that voluntary intoxication could be a defense to a specific intent crime would properly have been denied by the trial court," and holding that "[t]herefore, we conclude that Haggard's trial counsel did not provide ineffective assistance of counsel").

Further, to the extent Thomeson argues that his trial counsel failed to object to a preliminary instruction which did not include the word "knowingly," we note that the preliminary instruction to which Thomeson points sets forth the charging information against Thomeson, that the language of the charging information essentially tracked the language of

11

the statute making child molesting an offense, and that the child molesting statute at the time did not contain the word knowingly. See Ind. Code 35-43-4-3 (2004) (providing that "[a] person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting"), subsequently amended by Pub. L. No. 216-2007, § 42 (eff. Jul. 1, 2007); Pub. L. No. 158-2013, § 439 (eff. Jul. 1, 2014); Pub. L. No. 247-2013, § 6 (eff. Jul. 1, 2014); Pub. L. No. 168-2014, § 68 (eff. July 1, 2014) (amending the statute to include the words "knowingly or intentionally"). We also note the court's final jury instructions set forth the elements which the jury needed to find in order to convict Thomeson of child molesting and expressly stated that the jury was required to find that Thomeson acted knowingly. Although the statute in effect at the time of Thomeson's offenses did not specify a *mens rea* requirement, the culpability required for a child molestation conviction under the statute was "knowingly or intentionally." See Medina v. State, 828 N.E.2d 427, 430 (Ind. Ct. App. 2005) (some citations omitted and citing in part State v. Keihn, 542 N.E.2d 963, 967-968 (Ind. 1989) (where the legislature fails to specify a level of mental culpability with respect to an offense, a level of mental culpability of knowingly will be presumed to be required)), affirmed on reh'g, trans. denied. Thomeson does not claim the court's final jury instruction was an incorrect statement of the law or misled the jury. We cannot say, under the circumstances here where the preliminary instructions correctly set forth the charging information tracking the statute and the final jury instructions expressly stated that the jury was required to find that Thomeson acted knowingly in order convict him of the charged offenses, that the performance of Thomeson's

12

trial counsel was deficient for failure to object to the preliminary instruction or that Thomeson was prejudiced by any such failure. Additionally, Thomeson has not established that his appellate counsel provided ineffective assistance as, even had appellate counsel raised an issue regarding the jury instructions on appeal, he would not have prevailed based on Sanchez and the information in the trial record. Thomeson's claim in his post-conviction petition does not warrant reversal.

## CONCLUSION

For the foregoing reasons, we affirm the post-conviction court's order that the parties proceed by affidavit and its denial of Thomeson's petition for post-conviction relief.

Affirmed.

BARNES, J., and BRADFORD, J., concur.